[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13492

Non-Argument Calendar

_____

T.T. INTERNATIONAL CO., LTD,

Plaintiff-Appellee,

*versus*

BMP INTERNATIONAL, INC.,
BMP USA, INC.,

Defendants-Appellants,

IGAS USA, INC.,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-02044-CEH-AEP

_____

Before WILSON, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

BMP International and BMP USA (collectively "BMP") appeal a judgment against them for unjust enrichment totaling almost $75 million.  BMP disputes only the damage figure; its opponent, T.T. International ("TTI") argues that BMP waived the damage issue by not sufficiently raising it at trial.  After careful review, we hold that BMP has not waived its damages dispute but that its argument fails in any event.  We affirm the district court.

**I**

This case features dense facts but a simple premise:  TTI, a Chinese exporter, gave BMP, an American importer, some goods—for which BMP didn't pay.  TTI sued BMP, claiming unjust enrichment and breach of contract, in the Middle District of Florida—and moved for summary judgment at the close of discovery.  The district court issued a conditional grant of summary judgment as to the unjust-enrichment claim—conditional, that is, on a trial finding that no express contract existed.

At the end of the resulting trial, the court found no such contract, and so the conditional summary-judgment grant stood—which teed up the question of damages. The goods at issue were unique in that they sold for orders of magnitude more in the United States than they did in China. TTI advised the court to calculate damages using the United States valuation—which came out to nearly $75 million. BMP advised the court to calculate damages based on the factory price of the goods plus a small, bargained-for commission; because the factory was Chinese and thus would have paid Chinese prices, this basis would've yielded a substantially lower damage figure in the $2 million range.

The district court ultimately used the United States valuation and stuck BMP with a $74,214,187 tab. BMP filed a Rule 59(e) motion to vacate that order on the ground that the court had caused an unjust windfall by using the wrong damages metric. After some discussion of procedural matters, the court rejected that argument on the merits.

## II

BMP filed this appeal solely to contest the damage amount, alleging yet again that Chinese market value was the proper barometer. We hold that its argument lacks merit.[1]

---

[1] In its brief, BMP contests at length any suggestion that it waived its valuation argument by failing to raise it properly in the district court. *See* Reply Brief at 3–6. We needn't reach the waiver issue, which presents some thorny party-presentation questions, because we hold that BMP's position fails on the merits in any event.

## A

We review the legal standard used to compute damages de novo, while the factual findings underpinning a district court's determination of such a standard will "only be reversed if  unless clearly erroneous." *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 581 (11th Cir. 2001);  Fed. R. Civ. P. 52.  This being a diversity case, our lodestar will be Florida law rather than federal law.[2]

The numbers in this case are stark—it's a rare day indeed when each party thinks the other is off by more than $70 million. Given that delta, it's unsurprising that BMP argues that the district court gave TTI a windfall.  But even in light of the stakes, we're not convinced that the district court used the incorrect legal standard to compute damages—nor that it clearly erred in setting them.

Under Florida law, "[t]he measure of damages for unjust enrichment is the value of the benefit conferred, not the amount the plaintiff hoped to receive or the cost to the plaintiff." *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 50 (Fla. Dist. Ct. App. 2021).  One available benchmark for adducing that value is "the market value of the services." *Alvarez v. All Star Boxing, Inc.*, 258 So. 3d 508, 512 (Fla. Dist. Ct. App. 2018). But BMP doesn't cite any caselaw explaining what that market is. Even when BMP looks beyond the unjust-enrichment precedent

---

[2] The district court held without explanation that Florida law controls, and the parties have not contested that determination.

into quantum-meruit and tort actions, the cases state only that market value is "the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser"— or that recovery is based on value "in the particular community." *Ocean Elec. Co. v. Hughes Laboratories, Inc.*, 636 So. 2d 112, 114 (Fla. Dist. Ct. App. 1994); *Moncrief v. Hall*, 63 So. 2d 640, 642 (Fla. 1953). The problem remains: Which community? In transactions like the one here, where two different markets are involved, BMP has provided us no basis in Florida law for picking one over the other.

So, how did the district court arrive at the $74 million figure? It looked to two documents that reflected largely the same numbers. First, "Commercial invoices" that TTI sent to BMP requesting payment—that is to say, the bills. Second, 7501 forms which are reporting forms that an importer submits to customs to get its goods across the United States border. Both of these sources reflected the $74 million figure, and TTI's expert witness—CPA Stanley Murphy—established that BMP had already paid TTI a commensurate $170 million for the remaining goods from the shipment at issue. That sufficed for the district court—mostly because BMP gave it little else to go on. Indeed, the district opined that "Defendants never presented evidence as to how much was made on the sale of the goods in the U.S., the prices the goods were sold for, or the difference in the price the goods were sold for versus what was listed in the [invoices] as the value."

BMP's only relevant showing came from its expert Mr. Hu, who advanced the factory-price-plus-commission formula. But

other trial testimony revealed that BMP wouldn't have had knowledge of the factory price of the goods prior to filing suit—a fact which strongly undercut Hu's testimony that the factory price was a key component of what BMP expected, on the front end, to pay. The court found Mr. Hu's testimony unreliable as a result, and we find no clear error in that determination.

Accordingly, we find no clear error in the district court's decision to base its damage calculation on the only concrete numbers it was given to consider. And BMP supplies us no Florida precedent providing any guidance for picking one market over the other as the computation standard. We thus have no basis to reverse the district court's determination.

★ ★ ★

For the foregoing reasons, the district court did not err in its damages calculation.

**AFFIRMED**.